**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 18, 2023**

# In the Court of Appeals of Georgia

A23A0985. XIE LAW OFFICES, LLC et al. v. LUO.

MILLER, Presiding Judge.

This appeal concerns an employment compensation dispute between an attorney and his law firm that was resolved in binding arbitration. Xie Law Offices, LLC, Georgia Regional Center, LLC, and Xie Law Offices' managing partner Jeff Xie (collectively "XLO") seek review of the trial court's order confirming an arbitration award in favor of Kelvin Luo and denying their motion to vacate the award. XLO argues that (1) the trial court erred by concluding that Luo timely moved to confirm the arbitration award; (2) the arbitration panel improperly changed the award to find that Xie Law Offices, Georgia Regional Center, and Xie were jointly and severally liable for the award; and (3) the trial court erred by awarding post-judgment interest. While we conclude that Luo's motion to confirm the award was

timely and that the arbitration panel did not err by changing the award, we vacate the portion of the trial court's order awarding $35,024.18 in interest and remand for the court to clarify the basis for the award.

"In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous." (Citation omitted.) *Wells v. Wells-Wilson*, 360 Ga. App. 646, 647 (860 SE2d 185) (2021).

The record shows that Xie Law Offices is a law firm that focuses on immigration law and specializes in assisting Chinese investors to obtain work visas in the United States. As part of this work, Xie created Georgia Regional Center, LLC as a vehicle to help operate and manage qualified investment projects to assist Xie Law Offices' clients in their immigration applications. Xie Law Offices retained Luo as an associate attorney at its office in Norcross, Georgia, and Luo's primary responsibility was to prepare the paperwork for Xie Law Offices' clients' immigration petitions. Luo's employment contract contained an arbitration provision stating that "[a]ll disputes, differences and controversies arising out of, under, or in connection with this Agreement shall be settled and finally determined by Arbitration in Georgia under the then existing Rules of the American Arbitration Association."

Eventually, in 2012, Xie Law Offices opened a branch office in Shanghai, China, and Luo was named the manager of the representative office of Georgia Regional Center at the Shanghai office. In exchange for this increase in responsibilities, Luo was promised various new bonuses and additional income. XLO paid Luo's bonuses in 2012 and 2013, but it only partially paid his bonuses in 2014 and 2015 despite Luo sending reminders. In 2016, Luo became eligible to be considered a partner in the law firm, and Luo and Xie began negotiations regarding potential terms. The parties heavily dispute what exactly occurred during this negotiation period, but ultimately, following a face-to-face meeting in China in late October 2016, Luo's employment with XLO was set to terminate by the end of the year.

The parties drafted and signed a settlement agreement regarding Luo's departure wherein, among other provisions, XLO agreed to pay all unpaid bonuses, while Luo was not allowed to encourage XLO's clients to leave XLO and be represented by Luo going forward. Each of the clients was nevertheless given the opportunity to choose whether they wanted to continue to be represented by XLO or be represented by Luo going forward. Of the remaining clients obtaining immigration services from XLO, seven chose to be represented by Luo.

In 2017, XLO filed a complaint in federal court against Luo and his new employer, raising nine claims and alleging generally that Luo violated the non-compete and non-solicitation provisions in his employment contract. XLO later voluntarily dismissed Luo from the case, and in 2020, XLO initiated arbitration proceedings in Fulton County, Georgia, through the American Arbitration Association, raising the same nine claims against Luo and seeking around $4.5 million in damages. Luo counterclaimed for breach of contract due to XLO's continued failure to pay the past due bonuses.

In May 2021, following a telephonic hearing, the arbitration panel granted partial summary judgment to Luo and dismissed all of XLO's claims that related to the original employment agreement. Following a final evidentiary hearing, on July 14, 2021, the arbitration panel denied all of XLO's claims, found in favor of Luo on his claims, and awarded him $500,345.49 in damages, consisting of the unpaid bonuses, 7% pre-judgment interest starting from February 1, 2017, and attorney fees. The arbitration panel found that Xie and Georgia Regional Center breached the settlement agreement by failing to make the required bonus payments under the settlement agreement and that "Xie Law is also liable for payment of the same sums as" Xie and Georgia Regional Center based on unjust enrichment and quantum

4

meruit. On July 23, 2021, Luo filed a motion for clarification under Rule 40 of the American Arbitration Association's Rules, asking the arbitration panel whether it intended that Xie, Xie Law Offices, and Georgia Regional Center to be jointly and severally liable for the entire amount of damages. On July 26, 2021, the panel granted the motion and ordered that "the Award is hereby clarified by expressly finding and stating that Xie Law [Offices], [Georgia Regional Center], and Mr. Xie are jointly and severally liable for the full amount of the Award[.]"

On October 4, 2021, XLO filed a petition to vacate the arbitration award in Fulton County Superior Court, arguing that the award was improper for several reasons. On January 21, 2022, Luo filed a brief in opposition to the motion to vacate. On March 29, 2022, XLO filed an amended petition to vacate the arbitration award. On April 13, 2022, Luo filed an answer to the petition in which he prayed in part that "[t]he arbitration award be confirmed and judgment be entered in Respondent's favor[.]" On July 26, 2022, Luo filed a formal motion to confirm the arbitration award. In a very thorough order, the trial court denied XLO's motion to vacate the award, granted Luo's motion to confirm the arbitration award, and ordered that Luo was entitled to recover the $500,345.49 from the arbitration award "plus $35,024.18

in post-judgment simple interest, which has accrued at the rate of 7% per year." This appeal followed.

1. First, we address XLO's argument that the arbitrators improperly changed the arbitration award by adding a provision that the defendants were all jointly and severally liable for the damages.[1] We conclude that the change was proper because it ultimately did not alter the legal effect or the merits of the arbitration award.

Georgia's Arbitration Code provides that upon timely motion by a party an arbiter may change the award upon three grounds: "(1) [t]here was a miscalculation of figures or a mistake in the description of any person, thing, or property referred to in the award; (2) [t]he arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) [t]he award is imperfect in a matter of form, not affecting the merits of the controversy." OCGA § 9-9-11 (a).[2] "[A change] cannot be substantive

---

[1] We address XLO's enumerations of error in a different order than that presented in their brief.

[2] Luo moved the arbitrators to modify the award under Rule 40 of the American Arbitration Association's Employment Arbitration Rules, which states that "[w]ithin 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award." The language of this Rule essentially tracks the provisions of OCGA § 9-9-11 (a) regarding the powers of the arbitration panel to

6

such that it would affect the merits of the case." (Citation omitted.) *Tanaka v. Pecqueur*, 268 Ga. App. 380, 383 (3) (601 SE2d 830) (2004).

In the original award, the arbitration panel found that Xie and Georgia Regional Center breached the settlement agreement by failing to make the required bonus payments under the settlement agreement and that "Xie Law is also liable for payment of the same sums as" Xie and Georgia Regional Center based on unjust enrichment and quantum meruit. Accordingly, while the original award did not use the exact phrase "joint and several liability," it nevertheless had the same practical effect as such a finding because the panel clearly found each of the three parties liable for the full amount of damages incurred due to the breach of the settlement agreement. See, e.g., *InterAgency, Inc. v. Danco Financial Corp.*, 203 Ga. App. 418, 428 (5) (417 SE2d 46) (1992) (finding no fault in the explanation that, under joint and several liability, "[the judgment amount] can only be collected once but it is a joint and several liability if you find them liable under the same count"). Changing the award to add the express phrase "joint and several liability" thus did not "[affect] the merits of the controversy" because the legal effect of the award was the same, and so the change was proper under OCGA § 9-9-11 (a) (3) as correcting an imperfection in

change the award.

7

a matter of form. Compare *K/C Ice, LLC v. Connell*, 352 Ga. App. 376, 379 (2) (835 SE2d 11) (2019) (damages order clarifying the extent to which each defendant was liable for the final judgment *when the original order was completely unclear* as to each party's liability "went beyond correcting mere clerical errors or recording that which was previously unrecorded" but was a substantive change to correct a judicial error); *Tanaka*, supra, 268 Ga. App. at 382-383 (3) (request to increase the amount of damages was a substantive change and did not fall within the category of an award that is "imperfect in a manner of form"); *Conmac Corp. v. Southern Diversified Dev., Inc.*, 245 Ga. App. 895, 897 (1) (b) (539 SE2d 532) (2000) (arbitration panel's modification of arbitration award to validate a lien was improper because it altered the merits of the award). The trial court correctly denied XLO's motion to vacate on this basis.

2. XLO's primary argument on appeal is that the trial court erred by concluding that Luo timely moved to confirm the arbitration award. XLO argues that Luo's formal motion to confirm filed on July 26, 2022, was untimely filed from the original July 14, 2021 award and that Luo's April 13, 2022 answer to the motion to vacate did not meet the procedural requirements for a motion to confirm under the Arbitration Code. We conclude that Luo timely moved to confirm the arbitration award because

8

the time for Luo to file a motion for confirmation began to run from the arbitration panel's July 26, 2021 changed award, and so Luo's July 26, 2022 motion to confirm was therefore timely filed.[3]

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Additionally, we are required to avoid a construction that makes some language mere surplusage.

(Citations and punctuation omitted.) *Funvestment Group, LLC v. Crittenden*, 364 Ga. App. 447, 451 (1) (a) (875 SE2d 436) (2022). "The Arbitration Code demands that courts give extraordinary deference to the arbitration process and awards. Thus, courts are severely limited in vacating an arbitration award so as not to frustrate the legislative purpose of avoiding litigation by resort to arbitration. As the Arbitration

---

[3] Although the trial court found that Luo timely moved to confirm the award on a different basis, "[t]his Court may affirm the trial court's [order] if it is right for any reason, so long as the argument was fairly presented to the court below." *Alred v. Ga. Pub. Defender Council*, 362 Ga. App. 465, 471 n.13 (869 SE2d 99) (2022). In light of our conclusion, we do not address whether the trial court correctly determined that Luo's April 13, 2022 filing met the procedural requirements for a motion to confirm under the Arbitration Code.

Code is in derogation of the common law, it must be strictly construed." (Citations and punctuation omitted.) *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 411 (1) (696 SE2d 663) (2010).

Georgia's Arbitration Code provides that "[t]he court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified by the court as provided in this part." OCGA § 9-9-12. "[A]s our Supreme Court has emphasized, compliance with this one-year limitations period by the prevailing party to an arbitration proceeding is not optional. Thus, a timely filing is a prerequisite to maintaining an arbitration confirmation action." (Citation omitted.) *Riddick v. Williams & Bowling Developers, LLC*, 311 Ga. App. 666, 667 (716 SE2d 776) (2011).

Here, the arbitration panel issued its official award on July 14, 2021. On July 23, 2021, Luo filed a motion for clarification, and in response the arbitration panel issued a change of the award on July 26, 2021.[4] On July 26, 2022, Luo filed a formal motion to confirm the arbitration award.

---

[4] The parties do not appear to dispute that the award and subsequent changed award were delivered to them on these dates.

We conclude that this July 26, 2022 motion was timely because the July 26, 2021 changed award by the arbitration panel constituted the final "award" for which the time to file a motion to confirm began to run under OCGA § 9-9-12. Our research has failed to reveal a case wherein we have previously analyzed how a motion to change the arbitration award made to the arbiter under OCGA § 9-9-11 (a) affects the time limits to file subsequent substantive motions in the trial court. Considering the arbitration statute as a whole, we start by noticing that the same Code section crucially provides that "[a]n award changed under this Code section shall be subject to the provisions of this part concerning the confirmation, vacation, and modification of awards by the Court." OCGA § 9-9-11 (b) (4). For this particular provision to have any meaning, it must provide that parties may file in court petitions to confirm, vacate, or modify a changed award, and it follows from the "subject to" clause that the standard time limits to file petitions to confirm, vacate, and modify an award also apply. The question presented here is whether this "subject to" clause means that the time limits to file such petitions start to run at the time of the entry of the changed award or whether the time limits start to run at the time of the original award *notwithstanding* any changes to the award.

11

We conclude that the most natural way to read OCGA § 9-9-11 (b) (4) is that the time to file a petition to confirm an arbitration award must start at the time the arbitration panel issues its final, changed award – that is, the code section provides that changed awards are "subject to" the same time rules as normal awards, which in this case means that Luo had "one year after its delivery," OCGA § 9-9-12, to file a motion to confirm the changed award.[5] This conclusion is also supported by contextual clues from the surrounding statute and its structure. See *Funvestment Group, LLC*, supra, 364 Ga. App. at 451 (1) (a). For example, the Code provides that a party has 20 days to file a motion to change the award with the arbitration panel, OCGA § 9-9-11 (b) (1), the opposing party has 10 days to respond, OCGA § 9-9-11 (b) (2), and the panel then has an additional 30 days to rule on the motion unless the parties "extend, in writing, the time for this disposition." OCGA § 9-9-11 (b) (3).

---

[5] Because Luo's motion to confirm was timely as to the changed award, it is also timely to seek confirmation of the original award. A contrary reading would lead to the illogical result that a trial court would be statutorily authorized by OCGA § 9-9-11 (b) (4) to "confirm" the change but could not confirm the underlying award. Because changes under OCGA § 9-9-11 by definition involve the correction of errors that do not affect the merits of the case, this would defeat the entire purpose of a confirmation proceeding, which is to seek to have an arbitration award incorporated into a final judgment enforceable by the powers of the court. See, e.g., *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F3d 95, 104 (a) (1) (2d Cir. 2006) ("[A]rbitration awards are not self-enforcing[;] they must be given force and effect by being converted to judicial orders by courts[.]") (citation and punctuation omitted).

12

Thus, the statute contemplates that a motion to change the award may be before the arbiter for a period of two months or more following the original award. A party normally has three months from an award to file a motion to vacate or modify the award in a trial court, OCGA §§ 9-9-13 (a); 9-9-14 (a), and if we construed the time limits of the Arbitration Code to not account for the motion to change, it would leave parties in the strange predicament of having to file a motion to vacate or modify with either little time after the change in the award or even before the arbiter has ruled on the motion to change. Such a situation would frustrate the entire point of OCGA § 9-9-11 (b) (4), which is to allow for petitions to vacate or modify an arbitration award that has been changed by the arbitration panel.

We further note that this construction is also consonant with the manner in which we generally treat amended judgments and amended administrative orders from government agencies, where in both cases the amended judgment/order supersedes the first one and recommences the time to seek judicial review. See *Nikas v. Oxford*, 103 Ga. App. 721, 724 (120 SE2d 677) (1961) ("[W]hile the administrative agency is actively considering and materially modifying its decision in the matter before it, the time for appeal does not begin to run until the final order in the series[.] . . . This holding is in accord with the general rule which appears to be that where a judgment,

13

order, or decree is amended or modified, the time from which the appeal must be taken is to be computed from the date of the amendment or modification.") (citation omitted).[6]

XLO's reliance on our decision in *Riddick v. Williams & Bowling Developers, LLC*, supra, is unavailing. In *Riddick*, the arbitrator issued an award on April 7, 2007, and over a year later on April 21, 2008, the trial court asked the parties to seek clarification from the arbitrator as to whether certain claims had been addressed. Id. at 666. The parties received a response on May 6, 2009, confirming that the arbitrator had considered the claims, and a motion for confirmation was then filed on January 7, 2010. Id. We ultimately concluded that the motion for confirmation was untimely because it was filed almost three years after the final award and that the interim dispute over the clarity of the arbitration award did not affect the running of the time to file a confirmation motion. Id. at 667. In *Riddick*, however, we expressly acknowledged that the parties "did not move to vacate or modify the award," id. at

---

[6] It is true that our caselaw generally requires the amendment in these circumstances to impose a material change in order for the time to file to reset. See, e.g., *In re Estate of Dasher*, 259 Ga. App. 201, 202 n.1 (576 SE2d 559) (2002); *Undercofler v. Veterans of Foreign Wars Post 4625*, 110 Ga. App. 711, 713 (1) (139 SE2d 776) (1964); *Pruitt v. Jones*, 96 Ga. App. 545 (100 SE2d 632) (1957). These cases, however, do not involve a statute such as OCGA § 9-9-11 (b) (4) expressly providing for filing a petition after a changed award.

14

667 n.8, and any inquiries about the clarity of the award was not made pursuant to OCGA § 9-9-11, thus, that case is readily distinguishable from this one because OCGA § 9-9-11 (b) (4) was never implicated.

Therefore, we conclude that the time to file a motion to confirm began to run from the time the parties received the changed award on July 26, 2021. Luo's motion to confirm that was filed on July 26, 2022 was timely filed within one year of that date. See OCGA § 1-3-1 (d) (3); *Reese v. City of Atlanta*, 247 Ga. App. 701, 702-703 (545 SE2d 96) (2001) (for a statutory time limitation marked in years, a filing made on the relevant anniversary of the triggering event is timely filed). The trial court therefore correctly granted Luo's motion to confirm the arbitration award.

3. Finally, XLO argues that the trial court erred by awarding $35,024.18 in "post-judgment interest" as part of its order confirming the arbitration award, which XLO alleges constituted interest that accrued during the period between the entry of the arbitration award and the trial court's confirmation of the award and final judgment. XLO argues that such an award of post-judgment interest was error because it covered a time before the entry of any court judgment. In response, Luo maintains that the reference to "post-judgment interest" was instead meant to be "pre-judgment interest" so as to be consistent with the arbitration panel's award of pre-

15

judgment interest. In its confirmation order, the trial court did not specify the basis for the award of interest. We also cannot discern from the record the basis for the interest award because no hearing was held and because the parties' filings before the trial court did not mention or request any award of interest. "We are a court of review, not of first view. Our Supreme Court has instructed that we may remand . . . where the trial court's order lacks sufficient detail to enable meaningful appellate review." (Citations omitted.) *Flanders v. State*, 360 Ga. App. 855 (862 SE2d 152) (2021). Accordingly, we vacate the trial court's confirmation order to the extent it awarded $35,024.18 in interest and remand for it to clarify the basis for the award of interest and whether it intended to award pre-judgment or post-judgment interest.

Accordingly, we affirm the trial court's order confirming the arbitration award and denying XLO's motion to vacate the award, but we vacate the portion of the trial court's order awarding $35,024.18 in interest and remand for the court to clarify the basis for the award.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Mercier, C. J., and Hodges, J., concur.*